IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

JENNA AMACHER,

    Plaintiff

v.

TULLAHOMA HOUSING AUTHORITY,

MISTY DAMRON,                                     4:25-cv-13

KEN MACKAY,

ANITA MAY,

JOHN GRAY,

RAY KNOWIS,

CITY OF TULLAHOMA, TENNESSEE,

    Defendants

---

## COMPLAINT
---

The Plaintiff, Jenna Amacher, brings suit against the Defendants as follows:

### OVERVIEW

1) This lawsuit is about the Defendants' breach of an employment contract, or inducement to carry out said breach, all carried out primarily in retaliation for a prior lawsuit in violation of the First Amendment.

## THE PARTIES

2) The Plaintiff, JENNA AMACHER, is a private citizen of Coffee County, Tennessee who, at the time of the incidents described herein, was the Interim Director of the Tullahoma Housing Authority.

3) The TULLAHOMA HOUSING AUTHORITY is a government agency, implemented by the State of Tennessee[1] but funded primarily by federal money, that provides income to low-income families in the City of Tullahoma, Tennessee. It is meant to be independent of the CITY OF TULLAHOMA.

4) MISTY DAMRON was a commissioner of the TULLAHOMA HOUSING AUTHORITY. She is sued in her individual capacity.

5) KEN MACKAY was a commissioner of the TULLAHOMA HOUSING AUTHORITY. He is sued in his individual capacity.

6) ANITA MAY was a commissioner of the TULLAHOMA HOUSING AUTHORITY. She is sued in her individual capacity.

7) JOHN GRAY was a commissioner of the TULLAHOMA HOUSING AUTHORITY. He is sued in his individual capacity.

8) RAY KNOWIS was the Mayor of the CITY OF TULLAHOMA. He is sued in his individual capacity.

---

1 According to Tenn. Code Ann. § 13-20-104(a)(26), a housing authority is allowed to "be sued."

9) The CITY OF TULLAHOMA, TENNESSEE is a political subdivision of the State of Tennessee, which interacts with but is not supposed to control the TULLAHOMA HOUSING AUTHORITY.

## FACTUAL BACKGROUND

10) On February 7, 2024, JENNA AMACHER was hired as Interim Executive Director of the TULLAHOMA HOUSING AUTHORITY. The salary was supposed to be $95,000 per year. The job would also grant benefits in the form of favorable health, vision, and dental insurance policies. The contract promised employment for 130 days, with an option for the HOUSING AUTHORITY to extend it if they were pleased with AMACHER's performance.

11) In addition, at the HOUSING AUTHORITY's direction AMACHER took over the role of Finance Director, a position that would normally earn $65,000 per year. Under personnel policies of the HOUSING AUTHORITY, an employee was supposed to receive extra income when taking on such additional roles.

12) In October 2023, AMACHER had sued the CITY OF TULLAHOMA for civil rights violations (E.D. Tenn., Case 4:23-cv-40).

13) Under the Tullahoma City Charter, the Mayor (at that time RAY KNOWIS) has sole authority to appoint the commissioners on the HOUSING AUTHORITY.

14) Because he was upset with AMACHER for previously suing the CITY OF TULLAHOMA as well as him personally, RAY KNOWIS began conspiring with Commisssioners MISTY DAMRON, KEN MACKAY, and ANITA MAY (and by extension the TULLAHOMA HOUSING AUTHORITY itself) to retaliate.

15) First, KNOWIS began sending messengers to entice AMACHER with promises of employment as Executive Director if she would drop her lawsuit against him and against the City. These messages began before AMACHER even first took on the role of Interim Executive Director.

16) For example, on February 1, 2024, KNOWIS sent City Administrator Jason Quick to deliver the above message. Said meeting took place in the office of Alderman Derick Mann.

17) Later, Commissioners KEN MACKAY and MISTY DAMRON both contacted AMACHER, saying outright that they would hire her as full-time Executive Director for the HOUSING AUTHORITY if she agreed to drop her lawsuit against KNOWIS and the CITY OF TULLAHOMA. (Another condition mentioned was that AMACHER should also resign her then-position as Tullahoma Alderman.)

18) AMACHER would not agree to the proposal. Still, in order to keep the discussions open and to negotiate for the cessation of AMACHER's protected speech, the HOUSING AUTHORITY hired AMACHER — but only as *Interim* Executive

4

Director. The Defendants hoped that she would later see reason and drop her lawsuit, enticed by the carrot of a permanent position at the relatively high salary.

19) On another occasion, Commissioner ANITA MAY openly admitted to AMACHER that she was also acting on behalf of the Mayor to get AMACHER to drop her lawsuit as well.

20) Still, AMACHER refused to drop the lawsuit.

21) She did not actively resign as alderman, as requested. However, around that same time, she declined to run for re-election, thereby mostly accomplishing the same end.

22) In retaliation for AMACHER's speech (or court petition), Commissioners MISTY DAMRON, KEN MACKAY, ANITA MAY, and JOHN GRAY voted to terminate her position early, without cause. They carried out this termination in an unrecorded, closed meeting, without any notice to the public or to AMACHER. She was terminated on April 4, 2024.

23) The employment contract had expressly said that AMACHER could *not* be fired without cause. Further, it provided that even to fire her *with* cause, the HOUSING AUTHORITY must give her 10 days to correct any alleged deficiency. Finally, even if she *were* ultimately fired with cause, still the HOUSING AUTHORITY would have to pay her for the remainder of the 130 days, and to continue providing her benefits during that period.[2]

---

2 Part of the reason for this provision was that AMACHER took this Interim Executive Director job by giving up her prior employment, that had a yearly contract and an income of $70,000 per year, along with insurance benefits.a

5

24) Only 57 days into her 130-day contract, the HOUSING AUTHORITY and Commissioners DAMRON, MACKAY, and MAY voted to terminate the contract without cause in order to retaliate against AMACHER for suing the CITY OF TULLAHOMA and the Mayor. (GRAY may have also participated in the adverse vote for this same reason, but at present the Plaintiff cannot point to as specific evidence of said motive or conspiracy.)

25) The HOUSING AUTHORITY never paid AMACHER for the remainder of the contractual period, and it never paid her for the additional work done as Finance Director.

26) Besides the lost wages from the firing, AMACHER also suffered additional damages from the loss of insurance at a time when her family needed it.

27) At all times relevant, the Defendants were acting under color of law.

28) The wrongs committed herein were intentional, reckless, or wanton, justifying punitive damages.

## JURISDICTION

29) The federal District Court has subject-matter jurisdiction because this lawsuit raises a federal question (First Amendment retaliation). Further, the Court has supplemental jurisdiction over the state-law claims, which involve the same nucleus of fact.

30) This Court in Tennessee has personal jurisdiction over the Defendants because they are citizens of Tennessee.

31) Venue is proper in the Eastern District of Tennessee (Winchester Division) because the acts occurred here.

## CLAIMS PRESENTED

### COUNT I

### FIRST AMENDMENT RETALIATION, AND/OR CONSPIRACY

### 42 U.S.C. § 1983

*(Against Tullahoma Housing Authority, Damron, McKay, May, Knowis, and City of Tullahoma)*

32) The other sections are incorporated by reference.

33) By conspiring to retaliate against the Plaintiff for her prior lawsuit, and indeed by accomplishing said goal, Defendants TULLAHOMA HOUSING AUTHORITY, MISTY DAMRON, KEN MACKAY, RAY KNOWIS, and CITY OF TULLAHOMA, TENNESSEE abridged the Plaintiff's freedoms of speech and/or to petition. They did so under color of law.

34) Specifically, the TULLAHOMA HOUSING AUTHORITY is liable because it formally carried out the illegal activity — at the behest the three (or more) commissioners aligned toward that goal.

7

35) The CITY OF TULLAHOMA is liable because Mayor KNOWIS was a final policymaker for the City, most notably by his unilateral and absolute power to appoint HOUSING AUTHORITY commissioners, which he then leveraged to accomplish the retaliation.

## COUNT II

## BREACH OF CONTRACT

**Tennessee Common Law**

*(Against the Tullahoma Housing Authority)*

36) The other sections are incorporated by reference.

37) By firing the Plaintiff without cause, by failing to pay her (or to grant her employment benefits) for the remainder of her 130 days as Interim Executive Director, and by failing to reward her for the additional duties fulfilled as Finance Director — all required by contract — the Tullahoma Housing Authority is in breach of contract.[3]

---

3  The Plaintiff does not have a signed copy of the contract to attach to the Complaint because the HOUSING AUTHORITY has refused to give her one.

8

## COUNT III

## TORTIOUS INTERFERENCE WITH CONTRACT

### Tennessee Common Law

*(Against Damron, Mackay, May, Gray, and Knowis)*

38) The other sections are incorporated by reference.

39) By intentionally inducing and/or conspiring to induce the TULLAHOMA HOUSING AUTHORITY to breach its employment contract with the Plaintiff, Defendants DAMRON, MACKAY, MAY, GRAY, and KNOWIS are liable for tortious interference.

## COUNT IV

## OPEN MEETINGS ACT VIOLATION

### Tenn. Code Ann. § 8-44-101 et seq.

*(Against the Tullahoma Housing Authority)*

40) The other sections are incorporated by reference.

41) By firing the Plaintiff in a closed meeting and/or without adequate notice to the public, the TULLAHOMA HOUSING AUTHORITY violated the Tennessee Open Meetings Act.

42) Consequently, the termination of AMACHER is null and void, and she is entitled to the back pay for the period of purported termination. *See* Tenn. Code Ann. § 8-44-105.

## RELIEF SOUGHT

PREMISES CONSIDERED, Plaintiff Jenna Amacher prays for the following relief:

i) Compensatory damages of $60,000;

ii) For the Tortious Intereference claim, additional treble damages;

iii) Further, punitive damages against all parties except for the Tullahoma Housing Authority or the City of Tullahoma (who are immune from such);

iv) An injunction declaring the firing void, per violation of the Tennessee Open Meetings Act, and also granting any required backpay to make the Plaintiff whole;

v) Reasonable attorney's fees, per 42 U.S.C. § 1988; and

vi) Any additional relief to which the Plaintiff may generally be entitled, such as an award of court costs and discretionary costs.

Respectfully submitted,

/s/ Drew Justice
Drew Justice #29247
Attorney for Jenna Amacher
1902 Cypress Drive
Murfreesboro, TN 37130
(615) 419-4994
drew@justicelawoffice.com
