UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | | |
|---|---|---|
| JENNA AMACHER, | ) | |
| | ) | Case No. 4:25-cv-13 |
| *Plaintiff*, | ) | |
| | ) | Judge Travis R. McDonough |
| v. | ) | |
| | ) | Magistrate Judge Michael J. Dumitru |
| TULLAHOMA HOUSING AUTHORITY, | ) | |
| *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

**ORDER**

Before the Court is Defendant Ray Knowis and Defendant City of Tullahoma, Tennessee's ("the City") motion for judgment on the pleadings (Doc. 31). For the following reasons, the motion (*id.*) will be **GRANTED IN PART** and **DENIED IN PART**.

**I.      BACKGROUND**

In October 2023, Plaintiff Jenna Amacher sued the City and Knowis—the mayor of the City at the time—for alleged civil rights violations. (Doc. 1, at 3–4; *see also* Case No. 4:23-cv-40.) Plaintiff alleges that she was hired as Interim Executive Director for the Tullahoma Housing Authority[1] ("THA") on February 7, 2024, while her October 2023 suit was ongoing. (Doc. 1, at 3.) She alleges that her employment contract "promised employment for 130 days," with an option for the THA to extend her employment if it was satisfied with her performance. (*Id.*) Plaintiff alleges that Knowis had "sole authority to appoint the commissioners on the [THA]" as the City's mayor pursuant to the Tullahoma City Charter. (*Id.*)

---

[1] Plaintiff alleges that the THA "is a government agency implemented by the state of Tennessee" that "interacts with" the City. (Doc. 1, at 2–3.)

Plaintiff alleges that Knowis began conspiring with THA commissioners Misty Damron, Ken Mackay, and Anita May to retaliate against her for her October 2023 lawsuit around the time she was hired as Interim Executive Director. (*See id.* at 4.) Plaintiff alleges that Knowis sent "messengers to entice [Plaintiff] with promises of employment as Executive Director [of the THA] if she would drop her lawsuit against him and against the City." (*Id.*) She alleges that City Administrator Jason Quick initially contacted her to promise the "full-time" Executive Director position if she dropped her lawsuit. (*Id.*) She alleges that Mackay and Damron then contacted her to convey the same message but also informed her that she needed to resign "her then-position as Tullahoma Alderman" to receive the Executive Director position. (*Id.*) Plaintiff alleges that May subsequently "admitted to [Plaintiff] that she was [] acting on behalf of [Knowis] to get [Plaintiff] to drop her lawsuit." (*Id.* at 5.) Plaintiff alleges that Damron, Mackay, May, and THA commissioner John Gray voted to terminate her status as Interim Executive Director 57 days into her 130-day contract, after she ultimately refused to drop the suit.[2] (*Id.*)

Plaintiff filed the present action on April 4, 2025. (*See* Doc. 1.) She asserts a First Amendment retaliation and conspiracy claim against the City, the THA, Knowis, Damron, Mackay, and May. (*Id.* at 7.) She asserts a tortious-interference-with-contract claim against Knowis, Damron, Mackay, May, and Gray. (*Id.* at 9.) She also asserts claims for breach of contract and violation of the Tennessee Open Meetings Act against the THA. (*Id.* at 8–9.)

The City and Knowis filed a motion for judgment on the pleadings on October 6, 2025. (*See* Doc. 31.) Knowis and the City argue that Plaintiff fails to state a claim for First

---

[2] Plaintiff also alleges that she did not resign as alderman as Mackay and Damron requested. (Doc. 1, at 5.) She alleges that "she declined to run for re-election, thereby mostly accomplishing the same end." (*Id.*)

Amendment retaliation and conspiracy. (Doc. 32, at 4–8.) They also assert that Knowis is entitled to qualified immunity on Plaintiff's First Amendment claim and that she fails to sufficiently plead a basis for *Monell* liability. (*Id.* at 8–11.) Knowis argues that Plaintiff fails to state a claim for tortious interference with contract and that he is entitled to qualified immunity on that claim because Plaintiff's state-law claims "have no substantive difference" from Plaintiff's federal claims. (*Id.* at 11–12 (citing *Ward v. Still*, No. 2:10-CV-7, 2012 WL 37518, at *9 (E.D. Tenn. Jan. 9, 2012)).) Knowis and the City rely on the Tullahoma City Charter and Plaintiff's employment contract with the THA to support their motion.[3] (*See* Doc. 32.) The motion is now ripe for review.

## II.     STANDARD OF LAW

"Under Rule 12(c), after the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." *United Food & Com. Workers, Loc. 1995 v. Kroger Co.*, 51 F.4th 197, 202 (6th Cir. 2022) (quoting Fed. R. Civ. P. 12(c)) (citation modified). When a defendant moves for judgment on the pleadings, a court applies the same standard governing motions to dismiss pursuant to Rule 12(b)(6). *Id.* (quoting *Moderwell v. Cuyahoga Cnty.*, 997 F.3d 653, 659 (6th Cir. 2021)). Thus, "[t]o survive a motion for judgment on the pleadings, a complaint must contain sufficient facts to state a claim to relief that is plausible on its face." *Fed. Eng'rs & Constructors, Inc. v. Relyant Glob., LLC*, No. 3:19-CV-73-KAC-JEM, 2022 WL 1721454, at *1 (E.D. Tenn. May 27, 2022) (citation modified). A plaintiff must allege

---

[3] The Court will consider these materials because they are either (1) public records or (2) referred to and central to Plaintiff's claims. *See* (Doc. 1); *Saalim v. Walmart, Inc.*, 97 F.4th 995, 1002 (6th Cir. 2024). To the extent Knowis and the City intend to rely on Plaintiff's termination letter from the THA (*see* Doc. 32, at 5 (citing the letter)), the Court will disregard it, as they do not demonstrate that the letter fits either category.

facts which allow for an inference of "more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

For purposes of this determination, the Court construes the complaint in the light most favorable to the plaintiff and assumes the truth of all well-pleaded factual allegations in the complaint. *See Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007). This assumption of truth, however, does not extend to legal conclusions, *Iqbal*, 556 U.S. at 679, nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (citation omitted). During this inquiry, the Court may consider the pleadings, documents referred to in the complaint and central to the plaintiff's claim, and "matters of public record." *Saalim v. Walmart, Inc.*, 97 F.4th 995, 1002 (6th Cir. 2024) (citations omitted).

### III. ANALYSIS

#### A. First Amendment Retaliation and Conspiracy

"A civil conspiracy under § 1983 is an agreement between two or more persons to injure another by unlawful action." *Hardy v. Fisher*, 618 F. Supp. 3d 671, 692 (M.D. Tenn. 2022) (quoting *Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012)) (citation modified). "As a threshold matter," a plaintiff must first allege that she suffered a constitutional violation to sufficiently state a civil conspiracy claim. *See id.* (citation modified). A plaintiff must then allege: (1) "the existence of a single plan," (2) "that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right," and (3) "that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff." *See id.* (citing *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011)). "Plaintiffs are not required to prove an express agreement among all the conspirators, and each

conspirator need not have known all of the details of the illegal plan or all of the participants involved." *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) (citation modified). However, "conspiracy claims must be pled with some degree of specificity," *Siefert v. Hamilton Cnty.*, 951 F.3d 753, 768 (6th Cir. 2020) (citation omitted), and a "complaint must identify the alleged conspiracy with more than vague and conclusory allegations." *Rudd v. City of Norton Shores*, 977 F.3d 503, 517 (6th Cir. 2020) (citation modified).

Here, Plaintiff alleges that Knowis entered a conspiracy to retaliate against her for the exercise of her First Amendment rights. (Doc. 1, at 7–8.) Thus, as a threshold matter, Plaintiff must adequately allege a First Amendment retaliation claim. *See Hardy*, 618 F. Supp. 3d at 692. To state a First Amendment retaliation claim, a plaintiff must plausibly allege that: (1) she engaged in speech protected by the First Amendment, (2) she suffered an adverse action, and (3) "a causal connection exists between the speech and action." *Lemaster v. Lawrence Cnty.*, 65 F.4th 302, 307 (6th Cir. 2023) (citation omitted). An adverse action is "one that is capable of deterring a person of ordinary firmness from exercising the constitutional right in question." *Rudd*, 977 F.3d at 514 (citation omitted). This test is "calibrated . . . to the plaintiff," as "the average prisoner may have to endure more than the average public employee, who may have to endure more than the average citizen." *Id.* (citation modified) (quoting *Fritz v. Charter Township*, 592 F.3d 718, 724 (6th Cir. 2010)). To adequately plead that a causal connection exists between a plaintiff's speech and an adverse action, the plaintiff must plausibly allege that her protected speech was a "but-for cause" of the adverse action. *Lemaster*, 65 F.4th at 309 (citation modified).

"When public employees or contractors allege that the government has retaliated against them because of their speech, the [Sixth Circuit] has implemented the required but-for test using

a burden-shifting approach." *Id.* (citation omitted). "A plaintiff must first show that speech was a substantial or motivating factor of a harmful action." *Id.* (citation modified). This initial showing "does not require a but-for relationship," as "speech sometimes may motivate a defendant's harmful action even if the defendant would have taken the same action for another reason without the speech." *Id.* (citations omitted). If the plaintiff makes this showing, "the burden shifts to the government defendants." *Id.* (citation omitted). "They can avoid liability by proving that they would have taken the same action even if the plaintiff had not spoken," or put another way, "they must prove the absence of but-for causation." *Id.* (citations omitted). "In First Amendment retaliation cases, causation is a question of fact," *DeVooght v. City of Warren*, 157 F.4th 893, 902 (6th Cir. 2025) (citation omitted), and, thus, ill-suited for resolution upon a Rule 12 motion. *See William Powell Co. v. Ocean Marine Ins. Co. Ltd.*, No. 25-3322, 2026 WL 555576, at *4 (6th Cir. Feb. 27, 2026) (holding that "a question of fact is improper to resolve at the motion-to-dismiss stage" (citation modified)).

### i. Retaliation and Conspiracy

Knowis and the City argue that Plaintiff fails to state a claim for First Amendment retaliation because Knowis did not "perform an adverse employment action against Plaintiff." (Doc. 32, at 5.) They also argue that "Plaintiff does not properly plead any causal connection between her filing of the lawsuit and her termination from the THA" and assert that "Plaintiff was terminated for refusing to resign [as a Tullahoma Alderman] in accordance with the THA charter." (*Id.* at 6.) They argue that Plaintiff fails to state a claim for conspiracy because she does not allege that Knowis met with the THA commissioners to discuss her employment or that Knowis had any capacity to influence the THA commissioners. (*Id.* at 7–8.)

Plaintiff adequately alleges a First Amendment retaliation and conspiracy claim against Knowis. First, Plaintiff alleges that she suffered an adverse action after engaging in protected speech.[4] Plaintiff alleges that the THA terminated her employment after she refused to drop her lawsuit against Knowis and the City. (*See* Doc. 1, at 5.) Courts generally classify discharges, demotions, refusal to hire, nonrenewal of contracts and failures to promote as adverse actions, *see Handy-Clay v. City of Memphis*, 695 F.3d 531, 545 (6th Cir. 2012), and discharge is "undeniably [] an adverse action that would chill the free speech rights of an ordinary person." *See v. City of Elyria*, 502 F.3d 484, 494 (6th Cir. 2007) (citation omitted).

Plaintiff also alleges that her lawsuit against Knowis and the City was a motivating factor for her termination as Interim Executive Director for the THA. She alleges that Quick, Mackay, May, and Damron approached her on multiple occasions to entice her to drop her October 2023 lawsuit. (*See* Doc. 1, at 4–5.) Additionally, Plaintiff alleges that May admitted that she was acting on Knowis's behalf to get Plaintiff to dismiss the October 2023 suit. (*Id.* at 5.) Plaintiff's allegations indicate that Knowis and the THA commissioners had a shared interest in getting Plaintiff to dismiss her suit against him, and one could plausibly infer that her refusal to do so motivated the THA commissioners to terminate her employment.[5] Whether the THA

---

[4] Knowis and the City do not address whether Plaintiff's lawsuit was protected speech under the First Amendment, and, thus, the Court need not address the first element of Plaintiff's retaliation claim. *See DeVooght*, 157 F.4th at 898 (declining to address the first element of a First Amendment retaliation claim when it was undisputed).

[5] Although Plaintiff alleges that the THA commissioners—rather than Knowis—ended her employment, his participation in the alleged conspiracy with Damron, Mackay, and May would render this distinction moot. If Plaintiff adequately alleges that Knowis, Damron, Mackay, and May shared a single plan and conspiratorial objective, Knowis need not have been the individual to commit an overt act that furthered the conspiracy and injured Plaintiff. *See Rieves v. Town of Smyrna*, 67 F.4th 856, 863 (6th Cir. 2023) (explaining that "section 1983 permits a jury to hold co-conspirators liable for the damages flowing from a constitutional deprivation that all of the co-conspirators may not have personally carried out") (citations omitted); *see also Webb v. United States*, 789 F.3d 647, 671 (6th Cir. 2015) ("[T]he overt-act element requires only that at

7

commissioners would have terminated Plaintiff even if she "had not spoken," *Lemaster*, 65 F.4th at 309, because she did not resign as an alderman, is a question that cannot be answered without "some factual discovery." *Handy-Clay*, 695 F.3d at 545 (citations omitted). Accordingly, Plaintiff has adequately alleged the causation element of her First Amendment retaliation claim.

Lastly, Plaintiff adequately alleges that Knowis, Damron, Mackay, and May entered into a conspiracy to deprive Plaintiff of her First Amendment rights. As stated above, Plaintiff alleges that Mackay, May, and Damron approached her multiple times to entice her to dismiss her October 2023 suit and that May admitted that she was acting on Knowis's behalf. (Doc. 1, at 4–5.) These repeated efforts for the same purpose and May's alleged statement regarding Knowis's interests plausibly suggest that Knowis, Mackay, May, and Damron shared a plan and a conspiratorial objective to stifle Plaintiff's lawsuit (*i.e.*, her protected speech). Plaintiff also alleges that Damron, Mackay, and May committed an overt act that injured Plaintiff by voting to terminate her employment. (*Id.* at 5.) As such, Plaintiff plausibly alleges that Knowis conspired to infringe upon her First Amendment rights.

### ii. Qualified Immunity

"Qualified immunity protects government officials unless they (1) violated a constitutional right that was (2) clearly established." *DeVooght*, 157 F.4th at 898 (citation modified). "A right is clearly established when every reasonable official would have understood that what he is doing violates that right." *Id.* at 902–03 (citation modified). "The plaintiff bears the burden of showing the right was clearly established by identifying binding, on-point precedent." *Id.* at 903 (citation omitted). However, the Sixth Circuit "disfavors granting qualified immunity at the motion-to-dismiss stage." *Romero v. City of Lansing*, 159 F.4th 1002,

least one of the alleged conspirators committed an overt act or omission in furtherance of the conspiracy.") (citation omitted).

1008 (6th Cir. 2025) (citation omitted).  "Without any factual development beyond the allegations in a complaint, a court cannot fairly tell whether a case is obvious or squarely governed by precedent."  *Id.* (citation modified).  Consistent with the standard governing Rule 12(c) motions outlined above, "so long as the plaintiff states a plausible claim for relief, the case may proceed to discovery."  *Id.* (citation modified).

Knowis argues that he is entitled to qualified immunity on Plaintiff's First Amendment retaliation and conspiracy claim.  (Doc. 32, at 8.)  He contends that "there is no case so similar" to the facts Plaintiff alleges that would have placed him on notice "that he was violating Plaintiff's constitutional rights."  (*Id.* at 9–10.)

Qualified immunity does not apply here.  The Sixth Circuit has "repeatedly held that a public employee's right to engage in protected speech without retaliation is clearly established for purposes of qualified immunity."  *DeVooght*, 157 F.4th at 903 (citation omitted); *see also Buddenberg v. Weisdack*, 939 F.3d 732, 741 (6th Cir. 2019) ("We have long recognized that a public employer may not retaliate against an employee for her exercise of constitutionally protected speech."); *See*, 502 F.3d at 495 ("a public employee's right to speak on matters of public concern without facing improper government retaliation [is] settled").  Additionally, as outlined above, applications of qualified immunity are disfavored at the motion-to-dismiss stage, *Romero*, 159 F.4th at 1008, and Knowis has not demonstrated that a departure from the general rule is warranted.

### iii.  *Monell*

A municipal defendant can only be held liable under § 1983 "if 'a custom, policy, or practice attributable to the municipality was the moving force behind the violation of the plaintiff's constitutional rights.'"  *Gohl v. Livonia Pub. Schs. Sch. Dist.*, 836 F.3d 672, 685 (6th

Cir. 2016) (quoting *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012)). "A local government such as a municipality or county 'cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory.'" *Murray v. City of New Buffalo*, 708 F. Supp. 3d 1313, 1334 (W.D. Mich. 2023) (quoting *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 691 (1978)).

A municipality may be liable for a custom, policy, or practice under § 1983 pursuant to four recognized theories: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *White v. Hamilton Cnty.*, No. 1:23-CV-108, 2025 WL 837318, at *13 (E.D. Tenn. Mar. 17, 2025) (quoting *Helphenstine v. Lewis Cnty.*, 60 F.4th 305, 323 (6th Cir. 2023)). "As § 1983 municipal liability jurisprudence illustrates, however, it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality." *Cocchini v. City of Franklin*, 785 F. Supp. 3d 273, 301 (M.D. Tenn. 2025) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997)) (citation modified). "The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged," in that "the municipal action was taken with the requisite degree of culpability" and there must be "a direct causal link between the municipal action and the deprivation of federal rights." *Id.* at 301–02 (citation omitted).

A single act or decision may "qualify as an official government policy, though it be unprecedented and unrepeated." *Murray*, 708 F. Supp. 3d at 1335 (quoting *Holloway v. Brush*, 220 F.3d 767, 773 (6th Cir. 2000)). "For a single decision to qualify as a policy, the decision must have been directed by someone who is a decisionmaker for the government or who

established governmental policy on that issue." *Id.* (citation omitted); *see also Guptill v. City of Chattanooga*, 160 F.4th 768, 782 (6th Cir. 2025) ("[T]he policymaker must have final authority to establish municipal policy with respect to the action ordered . . ." (citation and internal quotations omitted)). Whether a decisionmaker retains final authority to establish policy is a question of state law. *Guptill*, 160 F.4th at 782 (citation omitted). "The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Murray*, 708 F. Supp. 3d at 1335 (citation omitted). "On a single-act theory, a plaintiff must demonstrate that a deliberate choice to follow a course of action is made from among various alternatives by the official responsible for establishing final policy with respect to the subject matter in question." *Guptill*, 160 F.4th at 782 (quoting *Burgess v. Fischer*, 735 F.3d 462, 479 (6th Cir. 2013)) (citation modified).

The City argues that it cannot be held liable for Plaintiff's First Amendment claim because Plaintiff did not adequately plead that Knowis violated her rights. (Doc. 32, at 10.) Alternatively, the City argues that "there is a complete absence of evidence to support that a Tullahoma City policy or custom was the causal link or moving force behind her alleged constitutional violation." (*Id.* at 11.) However, the City's argument on this issue is limited to the sentence quoted here. (*See id.*) In response to the City's argument, Plaintiff argues that Knowis was a final policymaker because he had the power to appoint the THA commissioners that possessed the authority to terminate Plaintiff's employment. (Doc. 33, at 7.)

Knowis was not a policymaker for *Monell* purposes. The parties agree that Knowis did not have the power to terminate Plaintiff as Interim Executive Director for the THA as mayor of the City. (*See* Doc. 1, at 8; Doc. 32, at 2; Doc. 33, at 7.) Thus, he did not have "final authority

11

to establish municipal policy with respect" to Plaintiff's employment as Interim Executive Director.  *See Guptill*, 160 F.4th at 782 (citation omitted).  This authority rested with the THA commissioners, an entity distinct from the City according to Plaintiff's allegations.  (Doc. 1, at 2, 5.)  Thus, while Plaintiff adequately states a First Amendment claim against Knowis in his individual capacity, she does not state claim against the City.

### B.  Tortious Interference with Contract

"In Tennessee, the common law action for tortious interference with contract and the statutory action for unlawful procurement of breach of contract have the same elements and operate as alternative theories of recovery."  *Rezult Grp., Inc. v. Turkheimer*, No. 3:22-CV-00567, 2023 WL 1975239, at \*10 (M.D. Tenn. Feb. 13, 2023) (quoting *Hauck Mfg. Co. v. Astec Indus., Inc.*, 376 F. Supp. 2d 808, 832 (E.D. Tenn. 2005)).  To state a claim under Tenn. Code Ann. § 47-50-109 or a common-law claim of tortious interference with contract, a plaintiff must plausibly allege that:

> (1) that there was a legal contract; (2) that the wrongdoer had sufficient knowledge of the contract; (3) that the wrongdoer intended to induce its breach; (4) that the wrongdoer acted maliciously; (5) that the contract was breached; (6) that the act complained of was the proximate cause of the breach; and (7) that damages resulted from the breach.

*United Biologics, LLC v. Amerigroup Tennessee, Inc.*, No. 3:19-CV-180, 2023 WL 11991074, at \*1–2 (E.D. Tenn. Apr. 24, 2023) (citations omitted).

Plaintiff sufficiently alleges a tortious-interference-with-contract claim against Knowis. In his motion for judgment on the pleadings, Knowis asserts that "Plaintiff did not sufficiently plead that Mr. Knowis acted with malice, that the contract was breached, that Mr. Knowis intended to induce a breach of that contract, or that Mr. Knowis' actions were the proximate cause of a breach."  (Doc. 32, at 11.)  Knowis also asserts that "Plaintiff was terminated due to

12

her failure to resign as alderman, which is required by the THA Charter." (*Id.*) He offers no additional argument. Conclusory assertions like these are insufficient to prevail on a dispositive motion. *See, e.g.*, *Bethune-Cookman, Univ., Inc. v. McLeod*, No. 6:22-CV-47-WWB-DAB, 2022 WL 18926797, at *2 (M.D. Fla. Sept. 21, 2022) ("Conclusory arguments that do not tie the case law to any specific issues presented are not sufficient to support a motion to dismiss.") (citations omitted); *Gavillan-Martinez v. Dixon*, No. 3:22CV5734/LAC/ZCB, 2024 WL 1097979, at *7 (N.D. Fla. Jan. 26, 2024) (holding that "conclusory arguments are not sufficient to support a motion to dismiss" (citation modified)), *report and recommendation adopted*, No. 3:22CV5734/LAC/ZCB, 2024 WL 1094688 (N.D. Fla. Mar. 13, 2024).

Even assuming that Knowis posited non-conclusory arguments in favor of his position, Plaintiff plausibly alleges that Knowis committed the tort of interference with contract. She alleges that Knowis, Damron, Mackay, and May entered a conspiracy that intended to coerce Plaintiff into dismissing her October 2023 lawsuit. (*See* Doc. 1, at 3–5.) Plaintiff also alleges that Damron, Mackay, and May voted to terminate Plaintiff's employment after she refused to dismiss the suit. (*Id.* at 5.) Plaintiff alleges that this termination caused a breach of her employment contract with the THA (*id.* at 5–6), and Knowis has not cited anything in the contract that suggests otherwise (*see* Doc. 32, at 11).[6] Assuming the truth of these factual allegations, it is plausible that Knowis was aware of Plaintiff's contract with the THA due to his involvement in the alleged conspiracy with multiple THA commissioners, and that he intended to

---

[6] Knowis seems to hint that the THA did not breach Plaintiff's employment contract because it possessed cause to fire her after she refused to resign as a Tullahoma alderman, contrary to the THA Charter. (*See* Doc. 32, at 3.) However, as established above, this argument is inadequately fleshed out and it ignores the provision in her employment contract that required the THA to give her ten days to correct any alleged deficiency in performance. (*See* Doc. 1, at 5; Doc. 19-1, at 3.)

induce the THA to breach Plaintiff's employment contract to harm Plaintiff after she refused to dismiss her October 2023 lawsuit against him.

### i. Qualified Immunity

Knowis argues that he is entitled to qualified immunity on Plaintiff's tortious-interference-with-contract claim because: (1) it arises from the same conduct as Plaintiff's federal claim, and (2) he is entitled to qualified immunity on the federal claim. (*See* Doc. 32, at 11–12.) However, Knowis is not entitled to qualified immunity on Plaintiff's federal claim. (*See supra* Part III.A.i.) As such, he is not entitled to qualified immunity on Plaintiff's state-law claim.

## IV. CONCLUSION

For the foregoing reasons, Knowis and the City's motion for judgment on the pleadings (Doc. 31) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's First Amendment retaliation and conspiracy claim against the City is **DISMISSED WITH PREJUDICE**. Plaintiff's First Amendment retaliation and conspiracy claim against Knowis in his individual capacity remains. Plaintiff's tortious-interference-with-contract claim against Knowis also remains.

**SO ORDERED.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**